FIRST MORTGAGE BOND CO. v. SAXTON.

1. LANDLORD AND TENANT—APARTMENT HOUSE—DOGS.

It is not an unreasonable regulation to require that a tenant of an· apartment in a multiple-dwelling house could not keep a dog in the apartment.

2. SAME—WRITTEN CONTRACTS—ORAL PROMISES—DOGS—APARTMENTS.

Any verbal promise that a tenant might keep a dog in an apartment, made prior to the entering of a written agreement with an express covenant not to keep a dog, would be of no avail to a tenant.

3. SAME—FORFEITURE—COMPLIANCE WITH COVENANT.

The lessor may terminate a lease pursuant to a forfeiture clause therein where agreements contained in the lease as to the use of the premises are broken by the lessee whether the failure to comply with the covenant was due to inability, mere neglect, subsequent prohibitory legislation or use of the premises by the lessee's servants in the course of their employment notwithstanding such use is without his knowledge and consent and in violation of his orders.

4. SAME—DOGS—APARTMENT HOUSE—VIOLATION OF EXPRESS AGREEMENT—REPOSSESSION.

Keeping a dog in an apartment house in violation of an express written agreement is such that, if persisted in, entitles the landlord to repossess himself of the premises.

Appeal from Wayne; Webster (Arthur), J. Submitted June 13, 1945. (Docket No. 28, Calendar No. 43,056.) Decided October 8, 1945.

Summary proceeding before circuit court commissioner by First Mortgage Bond Company, Inc.,

a Virginia corporation, against Katherine Saxton to recover possession of an apartment. Judgment for defendant on appeal to circuit court. Plaintiff appeals. Reversed and remanded for entry of judgment for plaintiff.

*George H. Heideman* and *George O. Hansen,* for plaintiff.

*Leo W. Piggott,* for defendant.

BUTZEL, J. Plaintiff is the owner of a building containing approximately 65 apartments in the city of Detroit, Michigan. On April 1, 1944, defendant signed a written rental agreement for apartment No. 216. One of its provisions is "That no dogs or cats shall be permitted in the apartment." Another provided for the 're-entry by the owner in case of objectionable conduct on the part of the tenant. Subsequently defendant, at the request of plaintiff, gave up her apartment and took apartment No. 111 in its place. She again signed an agreement with similar provisions. While in the first apartment, defendant became the owner of a very small Mexican dog. The caretaker did not object. When she moved to apartment 111, a new caretaker, who had taken charge, objected to plaintiff's keeping the dog in the apartment. Defendant claimed that when she signed the new agreement, she gave up the first apartment to favor plaintiff, that she took the new apartment with the express understanding that she could keep the dog, as she needed one to warn her against intruders because the window of the apartment opened onto a fire escape and she feared that someone might break into her apartment; that, also, for sentimental reasons, she was attached to the dog. The rental agreement appears to have been

only from month to month but because of the Office of Price Administration rules, the agreement could not be terminated except for violation of its terms. Plaintiff, however, had a right to repossession under the O.P.A. rules if there was a violation of the terms of the agreement. Defendant was notified that she would have to get rid of the dog or vacate the apartment. She refused to do either. Suit was brought before a circuit court commissioner and defendant prevailed. She also won on an appeal to the circuit court.

The trial court held that a slight violation of the agreement would not warrant an ejectment but there must be a substantial violation; that the harboring of a dog might or might not be a nuisance; that in any event there had been no right to claim a violation by reason of the fact that defendant harbored this small dog. There was some testimony that there was objection by others in regard to harboring the dog. Had the dog done some harm to other tenants or their property, claim for damages against the owner might be made, or the waiver of the clause in the lease in one instance might cause dissatisfaction by other tenants who might want to keep dogs, or by others who objected to a dog in a neighboring apartment. While there are apartments with heavy walls where no objection might be made to the keeping of a dog, nevertheless, it is not an unreasonable regulation to require that a tenant could not keep a dog in the apartment. The lease was signed by defendant and any verbal promises that she might keep a dog prior to the entering of a written agreement with an express covenant not to keep a dog would be of no avail. The rule is stated in 35 C. J. p. 1067, as follows:

"The lessor may terminate the lease, pursuant to a forfeiture clause therein, where agreements con-

tained in the lease as to the use of the premises are broken by the lessee, and this is so whether the failure to comply with the covenant was due to inability or to mere neglect, or although the use for which the premises were leased is prevented by subsequent legislation, or although the unauthorized use of the premises is by the lessee's servants in the course of their employment, notwithstanding such use is without his knowledge and consent and in violation of his orders.''

The case of *Perrault* v. *Griffin,* 27 Rev. Leg. N. S. (Que.) 24, is the only one cited in support thereof. Perhaps the reasonableness of the rule has never been questioned. It appears to us that the keeping of a dog in an apartment house, in violation of an express written agreement, is such that, if persisted in, entitles the landlord to repossess himself of the premises.

Judgment of the trial court is reversed, with costs to plaintiff, and the case is remanded to the trial court for direction to enter judgment for plaintiff.

STARR, C. J., and NORTH, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred. The late Justice WIEST took no part in the decision of this case.